UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| WILSON D. EMERY, as Personal Representative for the Estate of Roger Louis Emery, and DARIUS E. EMERY, as Personal Representative for the Estate of Selena Loretta-Lynn Medicine Eagle,<br><br>Plaintiffs,<br>vs.<br><br>PJH COMPANIES, INC., JAMES G. RICKERT and PETER HAGEN,<br><br>Defendants. | CIV. 18-5035<br><br>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO AMEND |

There are several motions currently pending before the Court that have been briefed by the parties in this case. For the following reasons, Defendants' Motion to Amend Answer to Assert a Third-Party Complaint and Counter-Claim and Motion to Modify Scheduling Order, Docs. 27, 30, are granted and Plaintiffs' Motion to Substitute Proposed Amended Complaint, Doc. 43, is granted in part and denied in part. The Court will address Defendant, PJH Companies, Inc.'s Motion for Summary Judgment, Doc. 39, in a separate memorandum opinion and order.

## FACTS

This case arises from a motor vehicle accident that resulted in the deaths of Roger Emery and his four-year-old granddaughter, Selena Medicine Eagle. Doc. 1. On October 3, 2017, Roger Emery and Selena Medicine Eagle were attempting to cross an intersection in Mission, South Dakota, from Marge Lane while heading south on the western side of the intersection. Doc. 1, ¶¶ 7, 11, 13, 14. Both Roger Emery and Selena Medicine Eagle were struck and killed by a 2013 GMC 3500 pickup driven by defendant James G. Rickert ("Rickert") pulling a gooseneck flatbed trailer transporting a skid steer. Doc. 1, ¶¶ 7, 16, 17. The intersection was under construction at the time of the accident. Doc. 1, ¶ 12.

On May 25, 2018, plaintiff Wilson D. Emery, as Personal Representative for the Estate of Roger Louis Emery, and plaintiff Darius E. Emery, as Personal Representative for the Estate of Selena Loretta-Lynn Medicine Eagle, (collectively, "Plaintiffs") filed a Complaint against

1

Defendants PJH Companies, Inc., Rickert, and Peter Hagen ("Hagen"), the owner of PJH Companies, Inc., (collectively, "Defendants"). In their initial complaint, Plaintiffs alleged claims of wrongful death and survival against Defendants. Doc. 1. It is alleged that defendant Rickert failed to come to a complete stop, failed to yield, and/or failed to keep a proper lookout before proceeding into the subject intersection. Doc. 1, ¶ 15. It is further alleged that Rickert was an employee of PJH Companies, Inc. and was engaged in the course of employment at the time of the accident. Doc. 1, ¶ 10.

Pending before the Court are Defendants' Motions to Amend Answer to Assert a Third-Party Complaint and Counter-Claim and Motion to Modify Scheduling Order, Doc. 27, 30; Plaintiffs' Motion to Amend/Correct Complaint, Doc. 32; Plaintiffs' Motion to Substitute Proposed Amended Complaint, Doc. 43; and Defendant, PJH Companies, Inc.'s Motion for Summary Judgment, Doc. 39. In this Order, the Court will address Defendants' Motions to Amend Answer to Assert a Third- Party Complaint and Counter-Claim and Motion to Modify Scheduling Order; Plaintiffs' Motion to Amend Complaint; and Plaintiffs' Motion to Substitute Proposed Amended Complaint. The Court will address Defendant, PJH Companies, Inc.'s Motion for Summary Judgment in a separate memorandum opinion and order.

## LEGAL STANDARD

"The Federal Rules of Civil Procedure liberally permit amendments to pleadings." *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). A timely motion to amend pleadings should normally be granted under Rule 15(a) absent good reasons to the contrary. *Popp Telcom v. American Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000). A district court appropriately denies the motion to amend if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.Com Securities, Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks and citation omitted).

I. **Motion to Amend Answer to Assert a Third-Party Complaint and Counterclaim and Motion to Modify Scheduling Order**

On March 29, 2019, Rickert filed a Motion to Amend Answer to Assert a Third-Party Complaint and Counter-Claim and Motion to Modify Scheduling Order. Doc. 27. Defendants PJH Companies, Inc. and Hagen have joined Rickert's Motion to Amend Answer to Assert a Third-Party Complaint and Counter-Claim and Motion to Modify Scheduling Order. Doc. 30. In support of their motions, Defendants state that during the course of discovery, they discovered that the subject intersection did not have any signage to instruct pedestrians to cross on the east or the west side of the intersection when walking south on Marge Lane, as were the decedents Roger Emery and Selena Medicine Eagle, and further, that there were no pavement markings indicating a crosswalk on either the east or west side of the intersection. Bogard Aff., Ex. C. Defendants state that there was only a sign facing to east/west traffic that stated, "Pedestrian Crosswalk." Bogard Aff., Ex. C. In addition, Defendants discovered that Anderson Contractors was the general contractor for the road project at the subject intersection and that Traffic Solutions was in charge of putting together the plan for traffic control for the project. Bogard Aff., Ex. D.

As a result of these newly discovered facts, Defendants state that Anderson Contractors and Traffic Solutions should be parties to the action. Doc. 28 at 3. In Defendants' proposed Third-Party Complaint, they alleged that Anderson Contractors, Inc. had a duty to act as a reasonable and prudent contractor in providing for the safety of the public during the construction project and that their breach of that duty resulted in the deaths of Roger Emery and Selena Medicine Eagle. Doc. 29-9 (Rickert); Doc. 31-1 (PJH Companies, Inc. and Hagen). Defendants allege further that if recovery is allowed against any or all of the defendants for the alleged negligence of Traffic Solutions and Anderson Contractors, Inc., that they are entitled to indemnification or, alternatively, contribution. Doc. 29-9; Doc. 31-1.

In addition, Defendants have moved to assert a counterclaim against the estate of Roger Emery for contribution and for contributory negligence. Doc. 29-10, 31-2. In support of their motion, Defendants allege that Roger Emery was not using reasonable care in leading Selena Medicine Eagle across the intersection because he was carrying her while walking across the subject intersection on the western side when the eastern side of the intersection had been designated as the area for pedestrians to cross. Doc. 29-10, 31-2.

Plaintiffs do not oppose Defendants' motions to amend their answer to add a third-party complaint against Anderson Contractors and Traffic Solutions and to assert a counterclaim against

the Estate of Roger Emery. Docs. 35, 36. Plaintiffs furthermore do not oppose Defendants' motion to set new deadlines once Traffic Solutions, Inc. and Anderson Contractors, Inc. have been added as parties so long as all deadlines, including the Plaintiffs' expert designation deadline, are reset since the Plaintiffs' expert designations may be affected by the amendments and/or addition of new parties. Docs. 35, 36.

## II. Plaintiff's Motion to Substitute Proposed Amended Complaint

On April 1, 2019, Plaintiffs moved to amend their complaint within the time for amendment detailed by the Court in its Second Amended Rule 16 Scheduling Order ("Amended Complaint"). Docs. 26, 32. Therein, Plaintiffs moved to assert two new claims against Defendants. Docs. 32. Specifically, Plaintiffs moved to add a claim against defendants PJH Companies, Inc. and Hagen for negligent hiring, supervision, and retention, and for willful and wanton hiring, supervision, and retention. Doc. 32-1. Plaintiffs also added a prayer for punitive damages. Plaintiffs filed a brief in support of their motion to amend complaint stating the factual basis for their proposed additional claims. Doc. 33.

On April 22, 2019, Defendants PJH Companies, Inc. and Hagen filed their memorandum opposing Plaintiffs' motion to amend complaint. Doc. 28. Therein, they argue that the Court should deny Plaintiffs the right to amend their complaint to add a prayer for punitive damages on the basis of futility because Plaintiffs have "failed to state a claim for punitive damages upon which relief can be granted." Doc. 38 at 5. Specifically, Defendants state that there is no legal basis for a claim for willful and wanton hiring, supervision, and retention[1] and that Plaintiffs have failed to allege any facts to support that PJH Companies, Inc. and Hagen acted with the actual or presumed malice that they state is necessary to recover punitive damages under South Dakota law.

"Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowel GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). A complaint states a claim upon which relief may be granted if it contains sufficient

---

[1] Defendants' assertion is incorrect. In South Dakota, courts recognize causes of action for negligence and for gross negligence which is considered to be synonymous with the phrase "willful and wanton misconduct." *See Fischer v. City of Sioux Falls*, 919 N.W.2d 211, 214 (S.D. 2018) (citing *Granflaten v. Rohde*, 283 N.W. 153, 155 (S.D. 1938)).

4

factual matter, accepted at true to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A plaintiff must demonstrate a plausible claim for relief, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. (citation omitted)*.

### A. Willful and Wanton Hiring, Supervision, and Retention & Punitive Damages

To be clear, "punitive damages are a form of relief and not a 'claim' that is subject to a Rule 12(b)(6) motion to dismiss." *See Benedetto v. Delta Air Lines, Inc.*, 917 F.Supp.2d 976, 984 (D.S.D. 2013) (citing *Sec. Nat'l Bank of Sioux City v. Abbott Labs.*, Civ. No. 11-4017, 2012 WL 327 863, at *21 (N.D. Iowa Feb. 1, 2012) ("[P]unitive damages are not a cause of action, and as such, so long as there are surviving claims, they are not subject to a motion to dismiss.")). Therefore, the Court must examine whether Plaintiffs have stated an underlying claim for relief to support their prayer for punitive damages. *See Berry v. Time Ins. Co.*, 798 F.Supp.2d 1015, 1022 (D.S.D. 2011). In other words, the Court must examine whether the facts in Plaintiffs' proposed Revised Amended Complaint, if accepted as true, state a claim for willful and wanton hiring, supervision, and retention that is plausible on its face.

On May 1, 2019, Plaintiffs moved to substitute a Revised Amended Complaint in place of the proposed Amended Complaint. Doc. 43. In their proposed Revised Amended Complaint, Plaintiffs include various factual allegations in support of Counts 3 and 4 alleging negligent and willful and wanton, hiring, supervision, and retention. Doc. 43. Specifically, Plaintiffs allege that defendants PJH Companies, Inc. and/or Hagen:

> (i) [H]ired Defendant Rickert to operate a commercial motor vehicle, and subsequently allowed him to operate a commercial motor vehicle, despite knowing that he did not possess a CDL as required by law;

5

(ii) [H]ired Defendant Rickert to operate a commercial motor vehicle, and subsequently allowed him to operate a commercial motor vehicle, without requiring him to complete any application for employment as required by law;

(iii) [H]ired Defendant Rickert to operate a commercial motor vehicle, and subsequently allowed him to operate a commercial motor vehicle, without conducting an independent investigation of his safety performance history with Department of Transportation regulated employers during the preceding three years as required by law;

(iv) [H]ired Defendant Rickert to operate a commercial motor vehicle, and subsequently allowed him to operate a commercial motor vehicle, without requiring him to provide a list of violations or certificate as required by law; and

(v) After hiring Defendant Rickert, they did not maintain a proper driver qualification file concerning Defendant Ricker as required by law.

Plaintiffs allege that defendants PJH Companies, Inc. and/or Hagen "elected to wholly disregard numerous federal regulations and instead proceeded to have [] Rickert operate a commercial motor vehicle with virtually no knowledge of his training and ability to safely do so.[2]" Doc. 43-1, ¶ 43. Plaintiffs further allege that defendants PJH Companies, Inc. and Hagen did not provide Rickert any training regarding the proper operation of commercial motor vehicles. Doc. 43-1, ¶ 42.

Plaintiffs agree with Defendants' contention that actual or presumed malice is necessary to recover for punitive damages under South Dakota law. However, Plaintiffs argue that they have

---

[2] Plaintiffs allege in their proposed Revised Amended Complaint that defendant PJH Companies and Hagen's conduct was:

> willful, wanton, and reckless, and they knew, or should have known, that injury was likely to occur when they hired Defendant Rickert and allowed him to operate a commercial motor vehicle hauling materials and equipment to, from, and among various states in the Midwest given: (i) that Defendant Rickert did not possess a CDL; (ii) that Defendant Rickert had previously failed the test to secure a CDL on more than one occasion; (iii) that they did not provide him with any training regarding the operation of a commercial motor vehicle; and (iv) that they knew virtually nothing about his background or suitability to operate a commercial motor vehicle since they did not require him to complete an application for employment, did not conduct an independent investigation of his safety performance history with the Department of Transportation regulated employers during the preceding three years, did not require him to provide a list of violations or certificate, and did not maintain a driver qualification file concerning him.

Doc. 43-1, ¶ 43.

6

stated a claim to relief for punitive damages because a jury may reasonably infer from the facts alleged in their proposed Revised Amended Complaint that PJH Companies, Inc. and/or Hagen acted with malice because, Plaintiffs contend, their actions involved "willful and wanton misconduct that indicates a reckless disregard for one's rights." Doc. 44, at 4 (quoting *Flockhart v. Wyant*, 467 N.W.2d 473, 478 (S.D. 1991) (citation omitted)).

Plaintiffs are correct in stating that presumed legal malice may be inferred when the defendant acts willfully or wantonly to the injury of another. *See Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991). Willful and wanton misconduct is behavior that demonstrates the defendant "consciously realized that his conduct would in all probability, as distinguished from possibility, produce the precise result which it did produce and would bring harm to the plaintiff." *Flockhart*, 467 N.W.2d at 478 (quoting *Tranby v. Brodock*, 348 N.W.2d 458, 461 (S.D. 1984)); *Fischer v. City of Sioux Falls*, 919 N.W.2d 211, 215-16 (S.D. 2018) ("'[C]ourts have often said that reckless, willful[,] or wanton misconduct . . . entails a mental element. The defendant must *know or have reason to know* of the risk and must in addition proceed without concern for the safety of others. . . .' [A] plaintiff alleging willful or wanton misconduct must prove a substantial probability of serious physical harm.") (quoting Dan B. Dobbs et al., *The Law of Torts* § 140 (2d ed.) (2018)).

In *Flockert v. Wyant*, 467 N.W.2d 473 (S.D. 1991), the South Dakota Supreme Court reviewed the imposition of punitive damages against an intoxicated driver who caused a collision on the interstate. The defendant had been drinking the night before as well as the day of the accident. *Id.* at 474. Before leaving Wall, South Dakota, on a trip to Rapid City, the defendant consumed two to three beers. *Id.* The defendant drank more beer during the fifty-mile drive to Rapid City and also drank beer at a bar in New Underwood, a town roughly thirty-five miles west of Rapid City. *Id.* The defendant eventually lost control of her vehicle on the interstate, went through the median, and struck the plaintiff's car. *Id.* When the accident occurred, the defendant had alcohol with her in the car and her blood alcohol level was determined to be .30%. *Id.*

The defendant had five previous alcohol related offenses dating back to 1972. *Id.* She had been through numerous alcohol treatment programs and had seen movies, attended classes, and listened to the lectures pertaining to the hazards of drinking and driving. *Id.* Despite the correctional programs, DUI citations and legal fines, the defendant continued to drive while drinking. *Id.* Considering all of these factors, the Court found that the defendant "must have known, with substantial certainty, the danger which her conduct engendered." *Id.* at 478.

In *Brewer v. Mattern*, 182 N.W.2d 327 (S.D. 1970), the South Dakota Supreme Court examined whether a driver's negligent conduct constituted willful and wanton misconduct for purposes determining liability under the South Dakota guest statute. The Court stated that the "defendant's mental attitude is established not by what he said nor even by what he may actually have thought, but rather by the attitude that an ordinarily prudent person would have had under all the attending circumstances." *Id.* at 362. The Court noted that:

> [t]he driver who actually thinks that he can safely give his passengers a 'thrill ride', or who actually thinks that he can engage in 'drag racing' without endangering his guests, or who actually thinks that because of his driving experiences he can safely disregard warnings and warning signs in obviously hazardous circumstances, cannot escape liability under the guest statute by establishing that in so doing he did not think that this conduct would probably (as distinguished from possibly) produce the precise result that it did produce and would bring harm to his guests.

*Id.*

Applying that standard to the facts of the case, the Court concluded that a jury question existed as to whether the defendant engaged in willful and wanton misconduct. *Id.* at 363. The Court found that the defendant:

> on a dark and rainy night, was driving on a sloshy, gravel detour road with which he was unfamiliar. He disregarded and ignored the warnings of a guest who was familiar with the road, disregarded the warning signs and the red flags [on the road] and operated his car at the speed of at least twice the posted speed limit.

*Id.* The Court stated that under the totality of the circumstances as they existed the night of the accident, a jury could reasonably find that the defendant engaged in willful and wanton misconduct and affirmed the trial court's order denying defendant's motion for judgment notwithstanding the verdict and motion for new trial.

In *Friedl v. Ford Motor Co.*, Civ. Civ. No. 03-4198, 2005 WL 2044552, at *6 (D.S.D. Aug. 24, 2005) (J. Schrier), a court concluded that a reasonable jury could find that defendant, Ford Motor Company, knew that its vehicles could suddenly accelerate and cause accidents like the one that injured the plaintiff and denied plaintiff's motion for summary judgment on the issue of whether a reasonable jury could find that the defendant acted with malice to justify an award of punitive damages.

*Fluth v. Schoenfelder Constr., Inc.*, 917 N.W.2d 524 (S.D. 2018) involved a lawsuit by a homeowner against the owner of a neighboring lot and contractor for damages caused by water penetrating her basement. The Court found that a jury question existed as to whether the defendant owner engaged in willful and wanton misconduct sufficient to support discovery on the issue of punitive damages. *Id.* at 534. The defendant owner had been informed by the city after an explosion on the property that the waterline accessing the property needed to be shut off by a licensed plumber at either the street-curb valve or at the water main beneath the street. *Id.* at 526. Instead, the broken water pipe had been crimped shut and approximately a year later, leakage from the pipe resulted in water damages to the adjacent property belonging to the plaintiff. *Id.* The Court concluded that questions of fact existed as to what the owner knew regarding the broken water pipe on his property; regarding the amount of water that was leaking from the pipe for nearly a year after it was temporarily crimped shut; and the likelihood that the water would cause injury to others. *Id.* at 534.

Accepting the facts pleaded by Plaintiffs as true for purposes of this motion, the Court concludes that Plaintiffs have stated a claim to relief against defendant PJH Companies, Inc. for willful and wanton hiring, supervision, and retention. Plaintiffs have alleged that PJH Companies, Inc. did not require Rickert to complete an application of employment and did not conduct and independent investigation into Rickert's motor vehicle safety performance. Further, Plaintiffs have alleged that PJH Companies, Inc. knew that Rickert did not possess a commercial driver's license, that Rickert had failed the commercial driver's license exam on more than one occasion, and that PJH Companies, Inc. did not provide Rickert any training regarding the proper operation of a commercial motor vehicle. Employing an individual to drive a GMC pickup hauling a loaded gooseneck flat-bed trailer who does not possess a commercial driver's license, and who apparently received no training, is conduct that alleges a claim that amounts to reckless disregard for the safety of others. How else is an employer to know that the public is safe from its employees driving heavy equipment on public highways other than by checking driving safety records and seeing that the employee has an appropriate commercial license? Here, in fact, the employee had allegedly failed to pass the commercial driver's license exam.

For these reasons, Plaintiffs' motion to amend their complaint to add a claim for willful and wanton hiring, supervision, and retention as alleged in Count 4 of the proposed Revised Amended Complaint and to add a punitive damages prayer for relief is granted. Whether or not

Plaintiffs' claim for willful and wanton hiring, supervision, and retention will survive summary judgment or directed verdict are separate questions.

## B. Plaintiffs' Proposed Claims in Counts 3 and 4 against Hagen Individually

It appears that Plaintiffs are putting forth two separate grounds for imposing individual liability upon Hagen for the alleged negligent hiring, supervision, and retention of Ricket. In their proposed Revised Amended Complaint, Plaintiffs allege that Hagen had an independent duty to hire and select competent drivers and also a duty to train, supervise and control such individuals. Plaintiffs allege that Hagen breached such legal duty by failing to exercise reasonable care in the hiring of Rickert or, in the alternative, by hiring Rickert despite having actual or constructive knowledge that he lacked the requisite training, experience, and competence. Doc. 43-1. In their reply brief in support of their motion to amend complaint and motion to substitute revised amended complaint, Plaintiffs also argue that while under South Dakota law, a shareholder or a corporation is generally not personally liable for the acts or debts of the corporation, there is evidence that PJH Companies, Inc. was acting as Hagen's alter ego and argue that as a result, the Court is justified in piercing the corporate veil to hold Hagen individually liable for the alleged negligence in this case.

Defendants PJH Companies, Inc. and Hagen argue that Counts 3 and 4 in Plaintiffs' proposed Amended Complaint alleging negligent, as well as willful and wanton hiring, retention, and supervision, fail to state a claim to relief against Hagen individually. Plaintiffs contend that under South Dakota law, Hagen, as the owner of PJH Companies, Inc., cannot be held individually liable for the alleged negligent actions of PJH Companies, Inc. Doc. 38 at 9 (citing § SDCL 47-1A-622) ("[N]o shareholder of a corporation is personally liable for the acts or debts of the corporation except that a shareholder may become personally liable by reason of the shareholder's own acts or conduct."). Accordingly, Defendants oppose Plaintiffs' Motion to Amend Complaint on the basis of futility to the extent Counts 3 and 4 seek relief from Hagen individually.

## A. Does Hagen Have an Independent Duty to Exercise Reasonable Care in Hiring, Supervising and Retaining Employees?

Plaintiffs allege that Hagen had an independent duty to hire and select competent drivers and also a duty to train, supervise and control such individuals. Plaintiffs allege that Hagen breached such legal duty by failing to exercise reasonable care in the hiring of Rickert or, in the alternative, by hiring Rickert despite having actual or constructive knowledge that he lacked the requisite training, experience, and competence. Doc. 43-1.

Hagen contends that the duty to hire and supervise is a duty that belongs to PJH Companies, Inc., not to Hagen individually as the owner of PJH Companies, Inc. In support of their argument, Plaintiffs cite to *Kirlin v. Halverson*, 758 N.W.2d 436 (S.D. 2008). There, an employee of a corporation providing heating, ventilation and air conditioning services, the corporation, and the corporate owner and manager were sued in a civil action for an assault committed by the employee during the scope of his employment. *Id.* at 443. Plaintiffs sought to hold the corporation and the owner and manager of the corporation vicariously liable for the employee's actions and also alleged claims of negligent hiring, training, and supervision against the corporation and the owner. *Id.* at 452-454.

The South Dakota Supreme Court affirmed the trial court's decision granting summary judgment in favor of the individual owner. *Id.* at 455. The Court stated that respondeat superior liability and liability for the duty of care which encompassed the plaintiffs' claims for negligent hiring, retention, training, and supervision, pass to the corporation and not to the individual owner of the corporation. *Id.* The Court held that "[a]s its agent, any negligent actions taken by the individual owner in his capacity as [the employee defendant's] supervisor are the negligent acts of the [corporation]." *Id.*

In South Dakota, the existence of a legal duty is a question of law. *Grynberg v. Citation Oil & Gas Corp.*, 573 N.W.2d 493, 501 (S.D. 1997).

In this case, Hagen, as servant or agent of PJH Companies, Inc. is liable for acts or omissions causing injury to third persons "whenever, under the circumstances, he owes a duty of care in regard to such matters to such third persons." *Lambert v. Jones*, 98 S.W.2d 752, 759 (Mo. 1936); *see also* SDCL § 20-9-1 ("Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill . . . ."). "In order to find actionable negligence, there must be a duty on the part of the defendant to protect the plaintiff from injury, a failure to perform that duty, and injury to the plaintiff resulting from such failure." *Blumhardt v. Hartung*, 283 N.W.2d 229, 231-32 (S.D. 1979).

Courts, including the South Dakota Supreme Court, have held in the context of analyzing individual liability under workmen's compensation statutes, that a servant or agent of a corporation "cannot be held personally liable for conduct or conditions falling within the ambit of responsibility of the corporate employer," but only for injuries caused by the agent's personal negligence. *Wilson v. Hasvold*, 194 N.W.2d 251, 293 (S.D. 1972), *superseded by statute*, SDCL

§ 62-3-2, as recognized in *Canal Ins. Co. v. Abraham*, 598 N.W.2d 512, 517 n.9 (S.D. 1999); *Blumhardt v. Hartung*, 283 N.W.2d 229 (S.D. 1979), *superseded by statute*, SDCL § 62-3-2, as recognized in *Canal Ins. Co. v. Abraham*, 598 N.W.2d 512, 517 n.9 (S.D. 1999)[3]; *Hansen v. Ritter*, 375 S.W.3d 201, 214 (Mo. Ct. App. 2012); *Athas v. Hill*, 458 A.2d 859, 865-66 (Md. Ct. App. 1983). In *Blumhardt v. Hartung*, the South Dakota Supreme Court found that a company foreman working at the job site where an employee was injured could not be held individually liable for failing to exercise reasonable care in providing for a safe workplace. 283 N.W.2d at 232-33. The Court stated that the duty to provide for a safe workplace was not a personal duty belonging to the foreman, but rather a duty that belonged to the company. *Id.* The Court distinguished *Wilson v. Hasvold*, 194 N.W.2d 251 (S.D. 1972) wherein it had allowed a claim of negligence proceed against the president and controlling stockholder of a corporation. *Id.* at 232. The Court noted that in *Wilson*, the defendant had a personal responsibility to exercise ordinary care in the operation of the tractor which injured the plaintiff. *Blumhardt*, 283 N.W.2d at 232.

In determining whether an individual acting in his capacity as agent of a corporation owes an independent duty of care to third persons, the Court finds instructive *Lambert v. Jones* wherein the Missouri Supreme Court held that "[an agent or servant] would be liable whenever he is guilty of such negligence as would create a liability to another person *if no relation of master and servant or principal and agent existed between him and someone else.*" 98 S.W.2d 752, 759 (Mo. 1936) (emphasis added). In other words, an agent's "independent duties owed to fellow employees do not include the duty to perform the employer's non-delegable duties, as those duties necessarily derive from, and are not independent of, the master-servant relationship." *Hansen v. Ritter*, 375 S.W.3d 201, 214 (S.D. 2012).

The duty to exercise reasonable care in the hiring, supervision, and retention of employees belongs to the employer, not to an agent of the employer. This conclusion explains the South Dakota Supreme Court's holding in *Kirlin* wherein it granted summary judgment on the plaintiffs' claims for negligent hiring, supervision and retention alleged against the individual owner of the corporation on the basis that such duties of care belonged to the corporation only. The South

---

[3] The Court notes that SDCL § 62-3-2 was amended and no longer may an employee under the Workmen's Compensation Act be liable for money damages resulting from his or her negligence, but only resulting from intentional torts committed by the employee. *See* SDCL § 62-3-2. Despite that, the Court finds that the reasoning in these cases gives the Court insight into how the South Dakota Supreme Court would analyze whether an agent of a corporation has an independent duty to third persons to exercise reasonable care in the hiring, supervision, and retention of employees.

Dakota Supreme Court's opinion accords with those of other courts that have held that the duty to exercise reasonable care in the hiring, supervision, and retention of employees belongs to the corporate employer and not to an agent of the employer. *See Hill v. Madison Cty School Bd.*, 947 F.Supp.2d 1320, 1343 (N.D. Ala. 2013) ("[T]he torts of negligent or wanton hiring, retention, training, or supervision of an 'incompetent' employee runs only against the employer, not supervisory co-employees of the 'incompetent' employee."); *Duran v. Warner*, Civ. No. 07-5994, 2013 WL 4483518, at 8 (D.N.J. Aug. 20, 2013) (citing *Di Cosala v. Kay*, 450 A.2d 508, 515-16 (N.J. 1982) (stating that under New Jersey law, a negligent supervision claim is cognizable against an employer through the principles of agency and vicarious liability and is not cognizable against individual supervisors in their personal capacity)).

Here, Plaintiffs allege that Rickert was acting in the scope of his employment with PJH Companies, Inc. at the time of the accident and that Hagen is the principal owner of PJH Companies, Inc. The duty to exercise reasonable care in the hiring, supervision, and retention of employees belongs to PJH Companies, Inc., not to Hagen individually.

### B. Piercing the Corporate Veil

Plaintiffs also seem to argue that the Court should pierce the corporate veil to hold Hagen individually liable for the alleged negligent acts of PJH Companies, Inc. Plaintiffs argue that PJH Companies, Inc. is the alter ego of Hagen because there was an intermingling of assets between Hagen and PJH Companies, Inc. In their proposed Revised Amended Complaint, Plaintiffs allege that the GMC truck driven by Rickert that struck and killed Roger Emery and Selena Medicine Eagle was titled in Hagen's name. Plaintiffs state in their reply brief that Hagen gave his personal credit card to Rickert to purchase supplies for PJH Companies, Inc. and that Rickert testified in his deposition that he did not know whether he had been hired by Hagen or by PJH Companies, Inc.

"[T]he doctrine of 'piercing the corporate veil' is . . . equitable in nature and is used by the courts to disregard the distinction between a corporation and its shareholders to prevent fraud or injustice." *Kansas Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 112 (S.D. 1994).

> The general rule which has emerged is that a corporation will be looked upon as a legal entity separate and distinct from its shareholders, officers and directors unless and until sufficient reason to the contrary appears, but when the notion of a legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, then sufficient reason will exist to pierce the corporate veil.

*Id.*

In this diversity action, whether to pierce the corporate veil "is a legal determination that, in our circuit, is governed by state law." *Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997). In deciding whether the corporate veil will be pierced, South Dakota courts apply a two-part test: (1) was there such unity of interest and ownership that the separate personalities of the corporation and its shareholders, officers or directors are indistinct or non-existent; and (2) would adherence to the fiction of separate corporate existence sanction fraud, promote injustice or inequitable consequences or lead to an evasion of legal obligations. *Kansas Gas & Elec. Co.*, 521 N.W.2d at 112. Factors the South Dakota Supreme Court has used in determining whether the first prong is met are: (1) undercapitalization; (2) failure to observe corporate formalities; (3) absence of corporate records; and (4) payment by the corporation of individual obligations. *Id.* at 112-13. If these factors are present in sufficient number and/or degree, the first prong is met and the court will then consider the second prong. *Id.* at 113.

"[T]he showing in equity necessary to satisfy the second prong must flow from the misuse of the corporate form." *Id.* (quoting *Greater Kansas City Roofing*, 2 F.3d 1047, 1052-53 (10th Cir. 1993)). "The doctrine of alter ego fasten liability on the individual who uses a corporation to conduct his or her own personal business . . . ." *Id.* at 117 (quoting 1 Charles R.P. Keating & Gail O'Gradney, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.10 at 615 (perm. ed. 1990)).

The Court finds that Plaintiffs have alleged insufficient facts to state a claim for piercing the corporate veil. *See Superior Homes, L.L.C. v. Comardelle*, Civ. No. 12-4126, 2013 WL 6146051, at *4 (D.S.D. Nov. 21, 2013) (J. Schrier) (dismissing claims against member of limited liability company because the plaintiff failed to allege facts supporting piercing the corporate veil). While Hagen may have permitted PJH Companies, Inc. and its agents/employees to use some of his personal assets to conduct business of behalf of PJH Companies, Inc., Plaintiffs have not alleged sufficiently the above factors to warrant piercing the corporate veil and imposing personal liability upon Hagen as shareholder/owner of PJH Companies, Inc.

Accordingly, it is hereby ORDERED:

1) Defendants' Motion to Amend Answer to Assert Third-Party Complaint and Counter-Claim and Motion to Modify Scheduling Order, Docs. 27, 30, are GRANTED; and

2) Plaintiffs' Motion to Substitute Revised Amended Complaint, Doc. 43, is GRANTED IN PART AND DENIED IN PART; Plaintiffs' Motion to Substitute Revised Amended Complaint to add a claim for negligent hiring, supervision, and retention as stated in Count 3 and to add a claim for willful and wanton hiring, supervision, and retention as stated in Count 4 is granted as to defendant PJH Companies, Inc., but is denied as to defendant Peter Hagen; and

3) Plaintiffs' punitive damages prayer for relief may proceed as to defendant PJH Companies, Inc.; and

4) Plaintiffs' first Motion to Amend Complaint, Doc. 32, is DENIED as being moot; and

5) In accordance with Local Rule 15.1, Plaintiffs shall have seven (7) days from the date of this Order to file a clean original of the Revised Amended Complaint in accordance with the Courts' Memorandum Opinion and Order; and

6) The parties shall comply with the Federal Rules of Civil Procedure in filing their responses to the amended pleadings; and

7) Within fourteen (14) days after all parties have noticed their appearances, the parties shall submit a new proposal for scheduling and the current scheduling order, Doc. 26, is withdrawn.

Dated this 10th day of July, 2019.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THIELEN, CLERK